# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

OCTAVIOUS TAYLOR, # 509910,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　No. 1:25-cv-00094
　　　　　　　　　　　　　　　　　　　)
WILBURN JENKINS, *et al.*,　　　　　　)　　Judge Trauger
　　　　　　　　　　　　　　　　　　　)　　Magistrate Judge Holmes
　　　　Defendants.　　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff Octavious Taylor, who is in custody of the Turney Center Industrial Complex in Only, Tennessee, filed a pro se complaint alleging violations of his civil rights. (Doc. No. 1).

## I.　　FILING FEE

Plaintiff has filed two Applications for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. Nos. 2, 8). Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's most recent IFP Application and supporting documentation, it appears that he lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his more recent IFP Application (Doc. No. 8) will be granted. The prior IFP Application (Doc. No. 2) will be denied as moot.

Under § 1915(b), Plaintiff remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in

1

installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, 20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the Turney Center Industrial Complex to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the

2

custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II.     SCREENING THE COMPLAINT

### A.  Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief.  Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016), and accept a plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### B.  Factual Allegations

In January 2025, the plaintiff lived in Unit 1B at the Turney Center Industrial Complex. (Doc. No. 1 at 4).

On January 21, 2025, six gang-affiliated inmates gained unauthorized access to the plaintiff's locked cell and attacked him. (*Id.*) These inmates lived in Unit 1A, and should not have

3

been able to access the plaintiff's cell in Unit 1B. (*Id.*) Defendant Officer Wilburn Jenkins was on duty overseeing Unit 1A at the time. (*Id.*) Officer Jenkins did not issue a movement call, announce a security breach, or take any other action to prevent the unauthorized movement. (*Id.* at 5). The six inmates punched and kicked the plaintiff and threatened to stab him with handmade weapons. (*Id.*). They then stole several items of property from the plaintiff's cell. (*Id.*) Before leaving, the inmates extorted the plaintiff for future payments in exchange for "protection." (*Id.* at 6). Officer Jenkins and Defendant Unit Manager Hickerson learned of the attack on January 21, 2025, but they did not take any action to protect the plaintiff from future attacks. (*Id.*)

The next morning, a different group of gang-affiliated inmates from Unit 1A approached plaintiff's cell. (*Id.* at 7). The door, which had been locked, was then opened remotely. (*Id.*) Only the booth officer on duty, Defendant Officer Orellana, or a supervisor could have opened the door remotely. (*Id.*) The plaintiff forced his way out of the cell and yelled for help before suffering any significant injuries. (*Id.*)

The plaintiff refused to return to his cell that day and was transferred to protective custody. (*Id.* at 9). When he received his property after the transfer, several items were missing. (*Id.* at 9−10). The plaintiff later learned that Officer Jenkins and Officer Orellana had allowed gang-affiliated inmates to pack the plaintiff's belongings. (*Id.* at 10).

Once in protective custody, the plaintiff tried to file grievances about the events of January 21 and 22. (*Id.* at 11). Defendants Unit Manager Hickerson and Bridget Allen would not process his grievances because the plaintiff did not know the identities of the officers who had allowed unauthorized access to his cell. (*Id.*) When the plaintiff later submitted grievances with the required information, he received no meaningful remedy. (*Id.* at 11−13).

In April 2025, the plaintiff told Defendant Unit Manager Stephanie Pittman of rumors that gang-affiliated inmates were planning retaliation for the plaintiff's "snitching." (*Id.* at 14). On April 29, 2025, despite the plaintiff's warnings, four gang-affiliated inmates gained access to the plaintiff's cell in the protective custody housing unit. (*Id.* at 15). The plaintiff was punched and kicked for several minutes before staff intervened. (*Id.* at 16). Defendant Corporal Willham allowed the offending inmates to leave without apparent consequence, suggesting coordination between staff and the inmates. (*Id.* at 17). The plaintiff received treatment at an outside hospital. (*Id.*)

### C. Analysis

The plaintiff asserts the following claims:

- failure to protect in violation of the Eighth Amendment;

- deliberate indifference to serious medical need in violation of the Eighth Amendment;

- retaliation in violation of the First Amendment; and

- denial of due process in violation of the Fourteenth Amendment.

As explained below, the plaintiff's failure-to-protect claims will proceed, but his other claims will be dismissed.

### 1. Failure to Protect

"[P]rison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation marks omitted). A prison official is liable under this theory when he or she "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

Here, the plaintiff alleges facts from which the court may reasonably infer that Officer Jenkins, Unit Manager Hickerson, and Officer Orellana were subjectively aware of potential

5

attacks on January 21 and January 22, but they did nothing to protect the plaintiff or other inmates. (Doc. No. 1 at 4−7). The plaintiff also alleges facts from which the court may reasonably infer that Unit Manager Pittman and Corporal Willham were subjectively aware of potential attacks in April 2025, but they did nothing to protect the plaintiff. (*Id.* at 14−17). Based on these allegations, the plaintiff's Eighth Amendment failure-to-protect claims shall proceed against Officer Jenkins, Unit Manager Hickerson, Officer Orellana, Unit Manager Pittman, and Corporal Willham in their individual and official capacities.[1]

### 2. Medical Indifference

"The right to adequate medical care is guaranteed to convicted . . . prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Id.* (quotation marks omitted). To succeed on such a claim, a plaintiff must demonstrate that his medical need was "objectively serious" and "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Darrah v. Krisehr*, 865 F.3d 361, 368 (6th Cir. 2017).

Here, the plaintiff alleges that he suffered bruising from the attack on January 20, 2025, and "deep tissue contusions," a possible concussion, fractured ribs, and sickle-cell pain from the attack on April 29, 2025. (Doc. No. 1 at 17, 25−26). The April 2025 injuries were sufficiently serious to require medical care. However, the plaintiff does not allege facts from which the court may infer that any named defendant denied him the proper care. Notably, the plaintiff was treated at an outside hospital "[o]n the day of the incident." (*Id.* at 17). Accordingly, the plaintiff's

---

[1] As the complaint makes clear, the plaintiff's official-capacity claims are for injunctive relief only. (*See* Doc. No. 1 at 2).

medical-indifference claims will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Retaliation

To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege facts from which the Court may infer that (1) he engaged in constitutionally protected conduct; (2) the defendants took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Marie v. Am. Red Cross*, 771 F.3d 344, 360 (6th Cir. 2014).

Here, the plaintiff alleges that he engaged in protected First Amendment conduct by filing grievances regarding the events of January 2025. (Doc. No. 1 at 11−13). However, he does not allege facts from which the court may infer that any named defendant took adverse action motivated by this protected conduct. While the plaintiff alleges that "staff" submitted a false disciplinary charge that was later dismissed, he does not identify any named defendant as being responsible for the disciplinary charge. Accordingly, the plaintiff's retaliation claims will be dismissed for failure to state a claim upon which relief may be granted.

Additionally, to the extent the plaintiff seeks to assert a claim based on inadequate grievance responses, that claim will be dismissed for failure to state a claim upon which relief may be granted. "[T]here is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. 2003).

### 4. Due Process

"[A plaintiff] cannot claim a denial of due process without explaining why the existing process is inadequate—he must prove the inadequacy of state remedies as an element of [his] constitutional tort." *Rothhaupt v. Maiden*, 144 Fed. Appx. 465, 472 (6th Cir. 2005) (quotation

marks omitted). Thus, "a prisoner's failure to plead the inadequacy of state post-deprivation remedies (such as, for instance, a civil action for conversion) requires dismissal of his Section 1983 due process action." *Reagan v. Cumberland Cnty., Tenn.*, No. 2:23-cv-00016, 2023 WL 3909669, at *3 (M.D. Tenn. June 8, 2023) (citing *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004)). Here, the plaintiff has not alleged that state remedies were inadequate to address his claims of lost property. His due process claims will therefore be dismissed for failure to state a claim upon which relief may be granted.

### III.    MOTION FOR COUNSEL

The plaintiff has filed a Motion for Appointment of Counsel. (Doc. No. 3). "Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 604−05 (6th Cir. 1993) (quotation marks and citations omitted). "Whether exceptional circumstances exist depends on the type of case and the plaintiff's ability to represent [himself]. In turn, this involves an assessment of the complexity of the factual and legal issues involved in the case." *Bryant v. McDonough*, 72 F.4th 149, 152 (6th Cir. 2023) (citations omitted).

Here, the factual and legal issues as to the plaintiff's failure-to-protect claims are fairly straightforward. The plaintiff must demonstrate that the named defendants knew of an excessive risk to his health and safety but disregarded it. Moreover, the plaintiff's filings demonstrate that he is able to articulate his position logically and follow the court's orders. Accordingly, the plaintiff's request for counsel (Doc. No. 3) will be denied without prejudice.

### IV.    MOTION FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

The plaintiff has filed an Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. No. 9).

"A motion for a TRO must be made in strict compliance with Fed. R. Civ. P. 65. If the movant is not represented by counsel, the *pro se* moving party must certify in writing the efforts made to give notice of the request for a TRO and the reasons why notice should not be required." M.D. Tenn. L.R. 65.01(c).

Here, the plaintiff has not certified in writing any efforts to give notice of his TRO request or the reasons why notice should not be required. Accordingly, his request for a TRO will be denied without prejudice. However, the plaintiff's request for a preliminary injunction remains pending, and the defendants will be ordered to respond to the Motion within 7 days after receipt of service.

## V.     CONCLUSION AND FURTHER PROCEEDINGS

The plaintiff's more recent IFP Application (Doc. No. 8) is **GRANTED**. His earlier IFP Application (Doc. No. 2) is **DENIED** as moot.

The plaintiff's Motion for Appointment of Counsel (Doc. No. 3) and his request for a TRO are **DENIED** without prejudice. The Motion for Preliminary Injunction (Doc. No. 9) remains pending.

The plaintiff's Eighth Amendment failure-to-protect claims **SHALL PROCEED** against Officer Willburn Jenkins, Officer Orellana, Unit Manager Hickerson, Unit Manager Stephanie Pittman, and Corporal Willham in their individual and official capacities.

All other claims are **DISMISSED** for failure to state a claim upon which relief may be granted. The Clerk **SHALL** terminate Bridget Allen as a defendant on the docket.

The Clerk is **DIRECTED** to send the plaintiff service packets (a blank summons (AO 440) and USM 285 form) for Officer Willburn Jenkins, Officer Orellana, Unit Manager Hickerson, Unit Manager Stephanie Pittman, and Corporal Willham. The plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do

9

so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court. Despite the issuance of process, the Magistrate Judge may *sua sponte* recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2).

The plaintiff is forewarned that this action may be dismissed if he fails to apprise the Court of any address changes.

Defendants Officer Willburn Jenkins, Officer Orellana, Unit Manager Hickerson, Unit Manager Stephanie Pittman, and Corporal Willham **MUST** respond to the plaintiff's Motion for Preliminary Injunction (Doc. No. 9) within **7 days** after service of summons.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

10